Roche *v.* Pennsylvania Railroad Company, Appellant.

Argued March 21, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*H. Francis DeLone,* with him *Barnes, Dechert, Price, Myers* and *Clark,* for appellant.

*William J. McKinley, Jr.,* for appellees.

OPINION BY HIRT, J., July 19, 1951:

In this action to recover damages for personal injuries to the minor-plaintiff, the jury found for him in the sum of $2,500 and for his parents in their right in the sum of $2,000. Defendant thereupon moved for judgments n.o.v., its request for directed verdicts having been refused at the trial of the case. The lower court after argument refused defendant's application, but at the same time ordered a new trial of its own motion. In this appeal from that order the defendant asks us not only to set aside the award of a new trial but to enter judgments in its favor.

The injury occurred on a triangular piece of land, of the defendant in Philadelphia, between its elevated tracks which run into Broad Street and its lower level main line tracks immediately west of the tunnel entrance to the Broad Street Suburban Station. The frontage of the area along Twentieth Street is closed by a board fence over seven feet high. From Twentieth Street the ground slopes in a sharp decline to the west; the surface is rough and ungraded. There is a gate in the board fence, the only means of entrance to the area, which when closed has been secured only by a latch which can be released by anyone. The gate was never locked. In the light of the verdicts we must take it as established that for upwards of two years children occasionally gained access to the area through the gate and used it as a playground. Inside the fence and about thirty feet west of the gate there is a "signal relay house", a concrete structure, the roof of which at its east end is more than 8 feet above the sloping ground. The concrete roof of the structure is flat and has an area of about 11 by 15 feet. The entire east end of the roof is closed off by a concrete wall 8 feet high above the roof level. There is a substantial iron fence almost 5½ feet high and 14½ feet long, anchored into the concrete and closing the north side of the roof to within

11 inches of its outer edge. Attached to this fence at a right angle at its west end there is a fan shaped iron fence of similar construction extending southwardly about 11 inches from the west edge. This fence closes off about one-half of the west end of the roof. Attached to the north fence, facing the enclosure at the time of the injury, there was a sign which in bold type bore the words: "Danger Live Wire Keep Off". To the north of the roof of the relay house there were six wires running eastwardly into the Suburban Tunnel. One of them was a high tension wire of 11,000 volts.

On Sunday afternoon February 13, 1949, the minor-plaintiff, then 8 years of age, with three other boys, ranging in age from 7 to 10 years, found the gate in the fence ajar and went into the enclosure. In the course of their play this plaintiff and two of his companions went along a rough ledge to the base of the concrete wall which closed off the east end of the relay house roof. By stepping onto a concrete block projecting from the base of the wall they were able to "swing around" the end of the wall and onto the roof of the structure. The minor-plaintiff, in the midst of a snow ball fight, climbed outside the fan shaped fence, above referred to, thence on to the narrow ledge on the track side of the north iron fence. From that position he fell 20 feet to the ground below. As a result of contact with the high tension wire he suffered burns to his hands, wrists and right forearm, and from the fall, a broken leg. After his fall the boy's legs extended onto the southernmost of defendant's tracks. An approaching locomotive however was stopped in time to prevent further injury to him.

The Railroad Company was bound to know that young children might unlatch the door in the fence on Twentieth Street and trespass on the area, and the defendant also was charged with constructive notice that children actually had used the area, on occasion

as a playground. In the lower court the defendant was found chargeable with negligence under §339 of the Restatement, Torts, as applied in *Bartleson v. Glen Alden Coal Co.,* 361 Pa. 519, 64 A. 2d 846. In that case a trespassing child went upon a high tension transmission tower after passing through a gate in the fence which surrounded it. The gate which had usually been kept locked, was standing wide open on that occasion. The child in climbing up the tower came in contact with high tension electric current and was seriously injured. In that case Mr. Justice LINN said: "The absence of notice of the open gate, if it be assumed, is immaterial; the negligent act was one of omission, failing so to secure the gate that it would not be opened. It was the defendant's duty to take reasonable precautions to prevent children from having access to its tower and coming into contact with its manifestly dangerous property''. Accordingly, to meet the question of the propriety of the order in the instant case, squarely, we will take it as established by the verdict, under the circumstances, that the defendant is chargeable with negligence.

If then the minor plaintiff came in contact with the highly dangerous wire while standing on the narrow ledge outside the fence on the relay house roof he is entitled to damages under the rule of the *Bartleson* case; but otherwise if he fell from the ledge and in the fall came in contact with the wire. The rationale of *McHugh et ux. v. Reading Co.,* 346 Pa. 266, 30 A. 2d 122 is that the danger of falling is commonly realized by a normal child, even of tender age; and a possessor of land is not to be visited with responsibility for accidents due to the trait of children of the more venturesome type who disregard the danger in climbing and slip and fall from an elevated structure. In the *McHugh* case a child, just under seven years of age, was charged as a matter of law with knowledge of the

danger of falling, and recovery was denied on that ground.

Bearing on the question as to what moved the court to award a new trial "in the interest of justice", this appears in the opinion: "It is principally because the testimony of the minor plaintiff is not clear as to how he happened to come into contact with the high-tension wire that we believe a new trial should be had in this case". We cannot agree that the testimony supports the court in the specific reason for a new trial above quoted. On the day of the injury it was not snowing but there was snow on the ground. In the course of a snow ball fight Charlie Gill and Danny Gallagher, two of Anthony Roche's companions, went with him to the roof of the relay house. The minor-plaintiff, and Nowacky, the fourth member of the group, were teamed up against the other two boys in the play. In response to a question put to the minor-plaintiff by his counsel, he testified unequivocally: "Then I went over there, and then my hand slipped and I slipped onto the wire and went down" on to the tracks. One question by his counsel contained this language: "When you *gripped* this wire, when your hand slipped on this wire, what did you feel?" The boy's answer did not contain an admission that he "gripped" the wire. There followed these other questions: "Did it hurt you very much when you *grabbed* it?" and, referring to the scar on the left hand, "That is the mark of the wire you *grabbed*", to both of which the minor-plaintiff answered "Yes sir" without comment. (Emphasis added.) It thus appears that plaintiff's counsel was an offender in attempting to lead the witness.

The cross-examination by defendant's counsel was conducted well within the bounds of propriety. And *nowhere did the minor-plaintiff state that his fall was the result of grasping the high-tension wire.* On the contrary he again reiterated his previous statement

that he slipped and in falling came in contact with the wire. This is the whole of his testimony on that phase of the case: "Q. Did you go all the way up to the wall as it is shown? [closing the east end of the relay house roof]. A. No sir. About when I got to there—Q. Just about where the sign is; is that right? A. Then my hand slipped and I fell and I hit the wire. Q. Did you fall first and then hit the wire? A. Yes, sir. Q. Just so we get it straight, you can see maybe a little better in this photograph which has been marked Plaintiff's Exhibit 6. You were standing right up where my finger is pointing? A. Yes, sir. Q. On the ledge. You can see at the top of the fence that is shown in that photograph, the back side of that sign I showed you a few minutes ago? A. Yes, sir. Q. That is about where you were standing; is that right? A. Yes, sir. Q. You say then your hand slipped? A. Yes, sir. Q. Then you fell down off of the ledge there; is that right? A. Yes, sir. Q. And came in contact with the wires as you fell? A. Yes, sir." On redirect examination, again in response to leading questions by his counsel he testified: "Q. When you saw it out there [the high tension wire] you thought it was a rope? A. Yes, sir, and then I slipped. Q. You reached out? A. Yes, sir. Q. To grab this rope? A. Yes, sir. Q. That is when you got hurt? A. Yes, sir."

All of the testimony of the minor-plaintiff is to the effect that he slipped and, in falling, grasped the wire or otherwise came in contact with it. The testimony of two of his boy companions does not throw any light on how the injury occurred. And in our view the repeated statement of the Gallagher boy that Anthony Roche "grabbed a hold of the wire" does not affect the validity of this minor-plaintiff's testimony nor, in our opinion, justify a new trial. Gallagher then was but 7 years of age and although he was in position to see what occurred, yet the minor-plaintiff knew bet-

ter than anyone else whether he slipped and fell on to the wire, or grasped the wire first and then fell as a result of the shock. There is other evidence indicating that the minor-plaintiff's testimony is the true version of what occurred. The doctor who examined the boy on his admission to the hospital gave the following as the medical history taken in the hospital by an intern: "While playing near a railroad track patient was standing on a wall approximate[ly] a story or two high when he lost his balance and fell. He landed on an electric line wire from which he was shocked, contact being made at the wrists and forearms. Legs and arms were injured in the fall. Brought into accident ward from which he was admitted for electric shock and fracture of leg". Plaintiff's counsel withdrew his objection, previously made, to the admission of the above history and when it was read into the record, stated: "That is exactly what happened".

It must be borne in mind that the burden was on the plaintiffs to prove not only negligence on the part of the defendant but negligence which was the proximate cause of the injury. Though it had been sufficiently established that defendant was negligent yet it seems clear that plaintiffs did not meet the burden of proving that the negligence chargeable to the defendant was the proximate cause of the injury; in fact all of the testimony of the minor-plaintiff, with some corroboration as above indicated, is to the effect that it was not. In our view, the order of a new trial therefore must be set aside regardless of whether it was entered exclusively for the reasons assigned in the opinion of the court (*Cuteri v. West Penn Railways Co.,* 305 Pa. 347, 157 A. 686) or in the exercise of a general discretion under the well-known and established rule restated in, e. g., *March v. Phila. & West Chester Trac. Co.,* 285 Pa. 413, 132 A. 355. To paraphrase what was

said by Judge RENO in *Scull v. Epstein*, 167 Pa. Superior Ct. 575, 579, 76 A. 2d 245, as applied to the circumstances of this case: Since the minor-plaintiff's testimony fails to prove actionable negligence we must take the case as he himself made it, even though another witness did "better for him". That witness cannot extricate the minor-plaintiff from the position in which he placed himself by his own testimony. And even the tender age of the minor-plaintiff does not excuse him, nor is he rescued from the predicament in which he has placed himself by the conflicting testimony of another boy even younger than himself. On the authority of *Zenzil et al. v. Del., Lack. & W. R. R. Co.*, 257 Pa. 473, 477, 478, 101 A. 809, it may be stated as an invariable rule of law that where there is a conflict in the testimony on a subject as to which the burden is on the plaintiff the court should not submit evidence "which will merely enable a jury to guess at a fact in favor of a party who is bound to prove it." To the same effect is *Musleva v. Patton Clay M. Co. (No. 1)*, 338 Pa. 249, 12 A. 2d 554 and *Cobb v. Mut. Life Ins. Co. of N. Y.*, 151 Pa. Superior Ct. 654, 659, 30 A. 2d 611. The principle was exhaustively discussed by then Chief Justice MOSCHZISKER in *Mudano v. Phila. Rapid Transit Co.*, 289 Pa. 51, 58, 59, 137 A. 104, with references to authorities in addition to those above noted. Cf. also, *Commonwealth v. Rex*, 147 Pa. Superior Ct. 121, 24 A. 2d 98.

Under the circumstances here present the defendant's right to judgment in its favor cannot be foreclosed by the grant of a new trial. The Act of April 22, 1905, P. L. 286, as amended, 12 PS §§681, 682, obviously intends that a party whose request for binding instructions has been denied is entitled to have his rule for judgment n.o.v. disposed of as a matter of law, unless a new trial has been validly granted. The defendant therefore cannot be made to acquiesce in the

grant of a new trial, with entry of judgments on the verdicts as the only alternative. The instant case is ruled by *Kuhler et al. v. Harrison Const. Co.*, 361 Pa. 100, 62 A. 2d 853. In that case the minor-plaintiff by his guardian recovered a verdict for damages from personal injuries. There as here judgment n.o.v. was refused and a new trial was granted. The Supreme Court reversed the order of a new trial as a clear abuse of discretion because no negligence on the part of the defendant was shown; and in so doing, and for the same reason, entered judgment for the defendant n.o.v. There is no difference in principle in the failure to show negligence on the part of a defendant and the failure to prove that defendant's negligence, so shown, was the proximate cause of the injury. Here the fall of the minor-plaintiff and not the failure of the defendant to bar children from access to the high tension wire was the proximate cause of the injury. Cf. *Elliott v. Allegheny County L. Co.*, 204 Pa. 568, 54 A. 278. The question of proximate cause therefore was one wholly of law[1] and the grant of a new trial was an abuse of discretion.

Order reversed and judgments here entered for the defendant n.o.v.

---

[1] The following cases are illustrative of the principle: *MacNeill v. Makos*, 366 Pa. 465, 77 A. 2d 378; *Frisch v. Texas Co. et al.*, 363 Pa. 619, 70 A. 2d 290; *Irwin Sav. & Tr. Co. v. Penna. R. R. Co.*, 349 Pa. 278, 37 A. 2d 432; *Zlates et ux. v. Nasim*, 340 Pa. 157, 16 A. 2d 381; *Jacob v. Philadelphia*, 333 Pa. 584, 5 A. 2d 176; *Kosson et al. v. West Penn Power Co.*, 293 Pa. 131, 141 A. 734; *Daniels v. Hilman Coal & Coke Co.*, 279 Pa. 47, 123 A. 653; *Quinn v. Philadelphia*, 224 Pa. 176, 73 A. 318; *Elliott v. Allegheny County L. Co.*, supra.