Gayne, Appellant, *v.* Philip Carey Manufacturing Company.

Argued April 27, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD.

*Cormac J. Malloy,* with him *Gray, Anderson & Schaffer,* for appellant.

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine, Frick, Scheetz & Hamilton,* for appellee.

OPINION BY MR. JUSTICE BELL, June 25, 1956:

Plaintiff brought an action in trespass against defendant, who was a building contractor. Plaintiff is an electrician who is in the employ of a sub-contractor who at the time of the accident was engaged in construction work on a building at Tabor Road and Harrison Street, Philadelphia. On February 21, 1951, plaintiff erected a scaffold which was supported on one end by a ladder and on the other end by an open door, against one side of which some material belonging to the defendant had been placed. Plaintiff was standing on the scaffold; the scaffold gave way; plaintiff fell and was seriously hurt. The jury was discharged because of failure to agree on a verdict. The Court entered judgment (on the record) in favor of defendant, and from this judgment plaintiff took this appeal.

From plaintiff's testimony, which of course must be taken with all reasonable inferences therefrom in the light most favorable to him, this is what happened: Plaintiff got a ladder approximately 7 feet high and a scaffold board 10 or 11 inches wide, 2 inches thick and approximately 9 feet 6 inches long. He grabbed hold of the door, which was open at a 135 degree angle (¾ths open) to see if it was solid, which it was—it didn't move forward or backward by pulling on it. There were carton boxes, possibly 3 feet high, with a burlap bag on top of them, in front of the door on which there was a door valve. Plaintiff "picked up my end of the scaffold board and put my foot on the burlap bag for a brace, grabbed the door for added leverage, raised the scaffold-

ing board and put it on the center of the door." His partner picked up his end of the scaffold board and raised it up on top of the ladder. Plaintiff was going to work on a fixture which was one foot to the right of the pipe room door, one foot to the right of the door jamb, and five feet out. When plaintiff was working on the scaffold the door was to his left, the ladder was to his right, and he was facing the opening of the door. Three times he heard another door open and shut and a hand truck, possibly 4 feet long by 2½ feet wide, came in and out. The boys pushing this truck were doing pipe covering work. When plaintiff was finished with the connections and ready to hang the fixture "I grabbed the stem [in the fixture] and picked it up off the scaffolding board. I started picking it up when I felt a lurch in the scaffolding board. The scaffolding board was disturbing me. I hurried up furiously to get the fixtures secured and save myself from falling. I tried to use the lock nut. However, I could not catch that lock nut. The plank board came downward on the other side—. Q. Did you see this board slide or slip? A. I could feel the lurch when it went down on the left side or door side. Q. What happened then? A. Then I skidded down the board and landed on my feet, still holding the fixture. In the meantime, it broke my wrist, and I had to drop it. I am looking at the door. It had closed up. . . . I looked around and no material was around the door that held it open previously." Plaintiff did not state what caused the scaffold to fall, or when the door closed, or what caused it to close, nor did he ever tell anyone that the boxes were holding the door in position—if they were—or not to remove the boxes.

" ' . . . "The mere happening of an accident is no evidence of negligence. . . . Plaintiff has the two-fold burden of proving that the defendant was negligent and

that his negligence was the proximate cause of the accident" . . .': Lanni v. P.R.R. Co., 371 Pa. 106, 109, 88 A. 2d 887": *Brusis v. Henkels*, 376 Pa. 226, 228, 102 A. 2d 146.

"A jury is not permitted, however, to speculate or guess; conjecture, guess or suspicion do not amount to proof": *Lanni v. P.R.R. Co.*, 371 Pa. 106, 110, 88 A. 2d 887.

Plaintiff contends that the testimony recited above proves that defendant was negligent (a) in that his employes must have seen that the cartons were holding the door open and (b) they must have removed the cartons from in front of the door and (c) *that this removal must have caused his fall* and (d) that it was negligence to remove the cartons without warning him and (e) there was no duty on his part to notice what defendant's employes were doing in front of his eyes or to warn them that the removal of the cartons would cause the door which had a valve on it, to close and cause his scaffold to fall.

We are of the opinion that plaintiff's evidence was insufficient to prove how the accident happened or that defendant's negligence was the proximate cause of the accident. It is not necessary, under these circumstances, to consider the question of plaintiff's contributory negligence or assumption of risk.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Roderick I. Gayne, an electrician of 30 years' experience, was on February 21, 1951 employed by the Keller Pike Company, sub-contractors doing construction work on a new building at Tabor Road and Harrison Street, Philadelphia. The Philip Carey Manufac-

turing Company is a contractor who on the same day was particularly engaged in the work of covering pipes with asbestos material in the unfinished structure. An employee of the defendant asked the plaintiff to connect up a ceiling light fixture in what was known as the foyer of the pipe room. In order to attach this fixture, which was made up of two one-hundred watt fluorescent tubes, weighing 35 pounds, it was necessary for Gayne to work from a scaffold which would take him close to the ceiling.

He obtained a scaffolding board some nine feet long and eleven inches wide and placed one end of it on a step ladder 7 feet high. An open door in the room offered itself as a prop upon which to rest the other end of the board. A large quantity of heavy material was already piled against the door, assuring Gayne of its immobility. This wedge or anchorage consisted of some nine boxes measuring 2 x 3 x 4 feet, containing a powdered glass compressed into insulating material used to cover pipes and tanks. The boxes, together with a burlap bag also holding insulating material, were lodged against the door in such a manner that they pyramided to one half the height of the door, which was 7 feet high, the same height as the ladder. Before lifting the scaffold to the top of the door, the plaintiff tested the stability of the anchorage by pulling and pushing at the door. As it failed to yield to his vigorous muscular efforts he became reassured that the door would not move as he toiled aloft.

With the scaffold now firmly in place atop the ladder and the fixed, opened door, Gayne proceeded to work at the various electric wires in the ceiling, preparatory to hanging the light fixture. As he labored at his task, two young men employed by the defendant company entered the foyer from a door other than the one which supported the scaffold. They were pushing

a truck and one of them called to Gayne: "Look out, electrician, I am going to push this truck into your ladder." Apprehensive that his visitors might knock the ladder to the ground, Gayne seized hold of a projecting pipe to save himself from a fall, but then, glancing down, he perceived that the lads were laughing and that their remark had been uttered only in jest. Gayne continued with his work and a few minutes later he heard the lads leaving, pushing their truck before them.

They returned a second and third time with their truck, always using the same entrance as theretofore, and on each visit made some seeming facetious observation as: "All right, we are going to hit the electrician again." After their third departure, the plaintiff felt the scaffold lurch, the board tilt, and he plunged to the floor. As he lay on the pavement with broken wrists and ankles, he noted that the anchoring door was almost closed and that the material which had held it open was gone. The joking youths had carried it away.

Gayne sued the defendant company in trespass, but the jury at the ensuing trial was unable to agree, whereupon the lower Court entered judgment for the defendant on the record. The Majority of this Court has affirmed that judgment. In its opinion affirming the judgment, the Majority says that the plaintiff's evidence was insufficient to prove how the accident happened. It is very clear how the accident happened. While the plaintiff was devoting full attention to his job overhead, the defendant's employees were shattering the solidity of his working platform. What more evidence is required to establish negligence? The defendant's employees could not have been more flagrantly negligent if they had chopped down a telephone pole while the plaintiff was hanging wires on its crest.

It is suggested by the Majority that there was a duty on the part of the plaintiff to warn the defend-

ant's employees not to remove the material which held the door in a fixed position. The law does not require oral proclamation of what is visually patent. An auto mechanic working beneath a lifted car is not required to tell those about him not to remove the jack which holds the car free from his body. A window cleaner washing windows on the outside of the tenth floor of a skyscraper is not expected to warn tenants on that floor not to unclasp the belt which saves him from a precipitate drop to the world below. A furnace repairman cleaning out the inside of a furnace is not charged with informing the proprietor not to light the furnace while he is inside it. The most elementary prudence and dutiful regard for the life and limb of others dictate that one not remove the jack which holds up the car, not unclasp the belt which holds the window cleaner, and not light the furnace which contains the furnaceman. The same kind of consideration for the welfare of one fellow-man should have counseled the defendant's employees in this case not to remove the material which was holding the door, which in its turn was holding up the scaffold, and which also was holding the plaintiff, as he toiled in the unspoken assurance that no one would strike him down from below.

After the accident, the defendant company's foreman Mr. O'Hara said to the youths who had hauled away the anchorage material: "Gee, men, the electrician fell off; get the stuff off of the truck and get it in here." This admission on the part of the defendant's agent, added to the other evidence produced at the trial, made out a prima facie case, which would justify any jury in concluding that the defendant's employees were responsible for the collapsing of the scaffold which fractured the plaintiff's ankles and wrists. Affirming a judgment for the defendant on evidence of this character strikes at the scaffolding of the law, and fractures principles

of justice which are the mainstay, the hope, and the pride of our system of American jurisprudence.

I would reverse and order a venire facias de novo and give the plaintiff his full day in court.