Loeb, Appellant, v. Allegheny County.

434

Argued October 7, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*H. N. Rosenberg,* with him *Rosenberg and Rosenberg,* for appellant.

*Robert Engel,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE BELL, January 12, 1959:

This is an appeal from a judgment non obstante veredicto entered by the court below in favor of the City of Pittsburgh. Plaintiff was serving as a juror

on the 6th floor of the City-County Building* in Pittsburgh. When he was excused for lunch, instead of using one of the elevators, he walked down the stairway in the Diamond and Grant Street corner of the building. While walking down the steps between the 5th and 6th floors he stepped on a small spot of liquid, slipped on the liquid, fell and was injured. The liquid spot was less than the size of a half dollar and was colorless and odorless. Plaintiff did not see the liquid spot until after he fell, nor did he notice that the wall light was out. There was no proof what the liquid was, or who had placed it there, or how long it had been there, and there was no proof of actual or constructive notice to the City.

Plaintiff claims he is entitled to have his case submitted to the jury because a wall light near the place where he fell, was out, and had been out or unlighted for an hour and 45 minutes prior to the accident. The ceiling lights on the ceiling of the 5th and 6th floors were lighted at the time and there are windows in the vicinity of plaintiff's fall.

After plaintiff fell he looked and saw that his heel had slipped on the above mentioned small spot of liquid (on one of the steps). He testified that he did not notice the liquid because a shadow was cast across the step due to the wall light being out. Plaintiff repeated several times that he did not stumble or misjudge a step, but that it was the liquid spot which caused him to slip and fall.

It is hornbook law (1) that the mere happening of an accident is not evidence or proof of negligence; (2) that plaintiff has the burden of proving that defendant was negligent and that its negligence was the proximate cause of the accident; (3) that a jury is not permitted to speculate or guess; conjecture, guess

---

\* The building has 9 floors, 12 elevators, and 4 sets of stairways.

or suspicion do not amount to proof: *Lanni v. Pa. R. R.,* 371 Pa. 106, 88 A. 2d 887 (and numerous cases cited therein) ; *Ebersole v. Beistline,* 368 Pa. 12, 82 A. 2d 11; *Gayne v. Philip Carey Manufacturing Co.,* 385 Pa. 618, 123 A. 2d 432; *Schofield v. King,* 388 Pa. 132, 130 A. 2d 93. Moreover, in this kind of case plaintiff must prove that defendant had actual or constructive notice of the dangerous or unsafe condition which caused his injury: *Lanni v. Pa. R. R.,* 371 Pa., supra; *DeClerico v. Gimbel Brothers, Inc.,* 160 Pa. Superior Ct. 197, 50 A. 2d 716.

The liquid could have been dropped a few minutes before plaintiff fell. Under these facts and circumstances it is crystal clear that plaintiff cannot recover if the spot of liquid was the proximate cause of the accident: *Lanni v. Pa. R. R.,* 371 Pa., supra. In the *Lanni* case plaintiff slipped on a grease spot which was on defendant's driveway and was covered with dust or dirt.

Plaintiff contends that the proximate cause of the accident was the absence of light. Defendant contends that the absence of light was not the proximate cause, but that even if it were, plaintiff failed to prove constructive notice in view of the size of the building and the short period of time the light was out.* We

---

* " 'What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case. Some of the factors affecting the question, in addition to the time elapsing between the origin of the defect and the accident, are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to [discover and] remedy it: Langley v. F. W. Woolworth Co., 47 R.I. 165, 131 A. 194. . . .' ": *Lanni v. Pa. R.R. Co.,* 371 Pa., supra.

shall assume, arguendo, that the light was out a sufficient length of time to justify submitting the question of constructive notice to the jury, if absence of light was the proximate cause of plaintiff's fall. However, we agree with the Superior Court that the liquid spot, and not the absence of the side (wall) light, was the proximate cause of plaintiff's fall. The case is ruled by *DeClerico v. Gimbel Brothers, Inc.,* 160 Pa. Superior Ct., supra. In that case Judge (later Justice) ARNOLD aptly stated (page 198) :

". . . The wife-plaintiff testified that she was descending the defendant's dimly lighted stairs leading to the subway, and she stepped upon a piece of paper which seemed to have under it a soft, mushy substance which caused her to fall. The paper covered about one-half, horizontally, of the tread of the step. The testimony showed that the stairway was generally dirty and had been, for a considerable number of days, littered with pieces of dirty, torn newspapers.

"The legal cause of the accident, i.e., the substantial factor of the plaintiff's harm, was the alleged soft substance underneath the paper on which she stepped. The newspaper did not cause her to fall, it caused the alleged danger to be hidden, and it could not be considered as the substantial factor of her harm.

"In what may be termed the obscuration cases, i.e., where the dangerous condition is hidden by some substance such as water, snow, paper or confusing lights, *the obscuration is never the legal cause of the harm,** but operates in certain cases to relieve the injured party from the contributory negligence of failing to observe the danger . . . Since the legal cause of the plaintiff's harm was the soft substance on the tread of the step, *there can be a recovery only upon a showing*

---

* Italics throughout, ours.

*that the defendant had actual or constructive notice of its presence.* Of this there was no evidence."

In *Kite v. Jones,* 389 Pa. 339, 347, 132 A. 2d 683, the Court said: " ' "Ordinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal (Landis, Administratrix v. Conestoga Transportation Company (No. 1), 349 Pa. 97, 100, 36 A. 2d 465, 466), but where the relevant facts are not in dispute and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from the evidence the question becomes one of law, and as such, is within the scope of appellate review: Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408, 414, 121 A. 198, 200; Leoni v. Reinhard, 327 Pa. 391, 396, 194 A. 490, 492; Irwin Savings & Trust Company v. Pennsylvania R. R. Co., 349 Pa. 278, 283, 37 A. 2d 432, 434; Frisch v. Texas Company, 363 Pa. 619, 621, 622, 70 A. 2d 290, 291, 292; Roche v. Pennsylvania R. R. Co., 169 Pa. Superior Ct. 48, 57, 82 A. 2d 332, 337. . . ." ' " [also *Listino v. Union Paving Co.,* 386 Pa. 32, 124 A. 2d 83.]

Plaintiff relies principally on *Stevenson v. Pennsylvania Sports and Enterprises, Inc.,* 372 Pa. 157, 93 A. 2d 236 and *Jerominski v. Fowler, Dick and Walker,* 372 Pa. 291, 93 A. 2d 433. In the *Stevenson* case and many others like it, this Court has held that where, on stairs, or on a walk, or in a hallway, or on some part of defendant's premises, there is an unusual change in levels, or a known defect, or an obstruction or an unsafe condition, and defendant fails to provide adequate light to warn persons of this unsafe condition, the question of negligence—if defendant had actual or constructive notice of the unsafe condition—is to be submitted to the jury.

In the *Jerominski* case, where this Court set aside a nonsuit, plaintiff proved that the grease spot which

caused plaintiff to fall was three inches in diameter, and had been on defendant-storekeeper's stairway for more than two hours. This Court held that these facts were sufficient evidence of constructive notice to take the case to the jury. The Court also held that the fact that shadows concealed the grease from plaintiff's view was sufficient to take the case to the jury on the question of her contributory negligence.

We have considered all the authorities upon which plaintiff relies, as well as those produced by our own research, and are convinced that they are all distinguishable on their facts from the instant case and do not support plaintiff's contention.

Judgment affirmed.

Mr. Justice COHEN dissents.

————

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The action of this Court, if allowed to stand, perpetrates a gross injustice.

Edward Loeb was called for jury duty in the Court of Common Pleas of Allegheny County and, like a good citizen, he responded to the call, attending on the Court in the City-County Building, a nine-story structure, in Pittsburgh. On the third day of his jury service he was excused for lunch at 11:30 a.m., and he proceeded to descend to the first floor from the seventh floor via the steps provided for that purpose, the elevator being crowded at that hour. The wall light in the staircase between the sixth and fifth floors was not burning. The resulting dimness threw a layer of obscuration over the steps, not enough to black out the passage, but thick enough to conceal, on the fourth step, a small patch of liquid. Due to the lack of light, his foot came into contact with the liquid, and he fell,

striking his head and back against the marble slabs of the treads.

He brought suit against the County of Allegheny, which brought in the City of Pittsburgh as an additional defendant. At. the trial of the case, the presiding judge entered a nonsuit which, however, he later lifted. At the second trial the plaintiff obtained a verdict but the Court en banc granted judgment n.o.v. The Superior Court affirmed the judgment n.o.v. We granted allocatur, and the majority of this Court has approved the affirmance of the Superior Court, inflicting, I repeat, an injustice on a man who, in the performance of his duties as a juror in our Courts, was injured through the fault of those who were charged with his safety. I respectfully submit that the law in the books does not authorize judgment n.o.v. on the facts in this case.

The Majority Opinion cites authority for principles and rules which no one contests, but quotes no authority for denying to the plaintiff the verdict he squarely won before a jury. The Majority Opinion says that the mere happening of an accident is not evidence or proof of negligence. No one disputes this ABC in negligence law. The Majority points out that the plaintiff has the burden of proving that the defendant was negligent—and no one debates this Alpha in personal injuries jurisprudence. The Majority emphasizes that a jury may not be permitted to guess or conjecture. Who is it that raises a flag of revolt against this antediluvian truth?

There is only one question in this case and that is: Was the City of Pittsburgh's* failure to keep the light burning in a public stairway an act of negligence? The jury found that it was, and I believe that, on the

---

* Allegheny County was exonerated of all responsibility in the case..

basis of what this Court has said in the past on this subject, we have no right to interfere with the verdict. In *Polm v. Hession,* 363 Pa. 494, the plaintiff fell from a step in an unlighted vestibule. There was no evidence of any defect in the steps. We affirmed a judgment in the plaintiff's favor saying: "The jury was clearly justified, if it believed plaintiff's testimony, in finding that defendant was negligent in switching off the light in the vestibule at midnight, as he is said to have done, instead of letting it remain until plaintiff, as well as all his other patrons, had departed."

In *Scurco v. Kart,* 377 Pa. 435, the plaintiff was nonsuited on the basis of contributory negligence. We lifted the nonsuit and ordered a new trial. The facts were that while walking in a dimly lighted hallway contiguous to a stairway the plaintiff stumbled off a landing and fell down three steps. We said: "Although two lights were burning, one outside the door of her apartment and the other at the far end of the second-floor hallway, the inadequacy of the lighting as a whole caused her to overstep the landing and fall down the three steps, whereby she sustained allegedly substantial injuries. She testified that the light where she fell was dim but the place was not wholly dark, that the landing and the steps were covered with black rubber stripping, and that shadows were cast thereon by the stairways obstructing the lights. Defendant, the owner and manager of the apartment building, did not contest the charge of negligence." Here again there was no defect in the stairway.

The Majority Opinion in the case at bar, speaking of the liquid on which the plaintiff fell, said: "The liquid could have been dropped a few minutes before plaintiff fell. Under these facts and circumstances it is crystal clear that plaintiff cannot recover if the spot of liquid was the proximate cause of the accident."

But the spot of liquid was not the proximate cause of the accident. The proximate cause of the accident was the dimness of light on the stairway. In his complaint the plaintiff averred as one of the items of negligence: "In failing to have said steps, at said point, properly lighted." At the trial he testified: "I said if it [the patch of liquid] would have been big enough, I would have seen it and I would have avoided it, and *if the lighting would have been proper,* would have avoided it also. . . . Q. The thing that caused you to fall was slipping on this unknown foreign substance? A. That and *the dimness of the light.* . . . Q. What caused you to slip? A. Slipped on the material, what was on the slipperiness of the steps; was on the steps, and me not seeing that part that was slippery. *That was because of the dimness of the light.*"*

Since we held in the *Polm* case and the *Scurco* case that the jury would be justified in returning a verdict in favor of the plaintiff if the accident was due to the absence of light, even though the steps were in good order, how can this Court consistently decide that, regardless of the condition of the light, the plaintiff had to show when the liquid had dropped on the stairs? If someone had left a roller skate on the steps just five minutes before the plantiff arrived and the condition of the light was such that he could not see the skate, and he fell over it, the length of time the skate was on the steps would not be the crucial item of negligence. The question of negligence would be whether the defendant had provided adequate lighting.

The Majority Opinion cites *Lanni v. Pa. R. R.,* 371 Pa. 106, in support of its position, but in that case the accident happened in broad daylight on the street. To equate that case with the one at bar is like comparing high noon with a total eclipse of the sun.

---

* Italics throughout mine.

Without stating anything specific about the matter the Majority Opinion says: "The ceiling lights on the ceiling of the 5th and 6th floors were lighted at the time and there are windows in the vicinity of plaintiff's fall."

The Majority here suggests that, in spite of the absence of the wall light, the plaintiff could have seen the liquid on the steps because of the window and the ceiling light. This is an unfair insinuation. There may be a window in a room but if it is covered with a blind or is painted black, daylight would be balked at the shrouded glass, so that the occupant of the room could gain scant solace, and no light, simply because he had a window. One of the witnesses here testified: "It was a bad day, very bad day. It had been snowing and slushy. There was no sun. It was a very dreary day." As a consequence, not much light came in from the window. And, so far as the ceiling lights were concerned, the plaintiff testified that: "They didn't shine directly on the step, because of the railing and because the walls cast a shadow on the steps."

Moreover, the question as to the condition of the light at the point of the accident was left squarely up to the jury. The judge charged the jury: "Now, *the main thing in this case, and the reason that you are trying it is that they allege here that the negligence was permitting this light to be unlighted where this accident occurred. That is the main thing that you have to try in this case,* the facts that you have got to find today. Now, if you find that there was no negligence on the part of the City or the County, then, of course, your verdict would go for the Defendants. On the other hand, if you find that there was negligence on the part of either the City or the County, then you have to determine what the damages are."

It may be in order also to point out here that, in lifting the nonsuit at the end of the first trial, the

court en banc emphasized the question of illumination or lack of it at the point of the accident. The court said: "We are of the opinion that the Trial Judge should have permitted the jury to pass upon *the question of whether the fact that the hall light was out of service prevented the plaintiff from seeing the substance on the stairway,* which he might otherwise have avoided."

At the second trial the jury found by its verdict that the City of Pittsburgh was negligent in "permitting this light to be unlighted where this accident occurred." In view of that definitive finding, based on the Judge's instructions, this Court may not now, as a matter of arbitrariness, or mere whimsy, conclude that perhaps, after all, there *was* light on the steps where the plaintiff fell.

In order to enter judgment n.o.v., this Court must cavalierly dismiss the two cases above cited and others we will later refer to. In *Stevenson v. Pennsylvania Sports and Enterprises,* 372 Pa. 157, the plaintiff fell down a flight of steps because of inadequate light on the steps. There was no contention that there was anything wrong with the steps. In affirming the plaintiff's verdict we said: "The maintenance man at The Gardens, Mr. Mark, testified that none of the lights available in the area were turned on . . . While difference in floor levels does not in itself consist of negligence . . . *it is negligence to fail to provide an area where there is a great difference in levels with adequate light* so that a person who is properly in the area is warned."

In commenting on the *Stevenson* case the Majority says: "In the Stevenson case and many others like it, this Court has held that where, on stairs, or on a walk, or in a hallway, or on some part of defendant's premises, there is an unusual change in levels, or a known defect, or an obstruction or an unsafe condition, and

defendant fails to provide adequate light to warn persons of this unsafe condition, the question of negligence—if defendant had actual or constructive notice of the unsafe condition—is to be submitted to the jury." But this is not what the *Stevenson* case says at all. We said there that: *"The lighting in the area became the crucial issue in the case."*

Nor is it true, as the Majority says, that the negligence in that case depended on the defendant's having actual or constructive notice of the unsafe condition of the change in floor levels. The only question was whether there was enough illumination; and there would have been enough if the defendant had turned on the lights. We said: "The plaintiff testified that there were lights in the area and that immediately after the accident they were turned on and gave sufficient illumination."

In this same *Stevenson* case, although Justice BELL dissented, he did agree with the proposition that inadequate lighting may constitute negligence. Justice BELL said: "The only pertinent negligence pleaded is that the defendant 'failed to furnish adequate and sufficient light for the use of plaintiff.' . . . *The crucial question is: Did plaintiff prove that the aisleway on which he was walking was not sufficiently lighted to enable him to see the commencement of the steps down which he fell?"*

In *Kmiotek v. Anast,* 350 Pa. 593, the plaintiff fell down steps in a theatre. In describing the lighting at the point of the fall this Court said: "Alongside the door, a short distance from the floor, was a yellow bulb light, shaded from the auditorium but designed to show that the top step to the basement was in the auditorium at a lower level and partly covered by the bottom of the door. There was also a shaded orange colored light on the adjoining wall on the opposite

side about six feet from the floor. The lighting was very dim." There was no evidence that the theatre was defectively constructed at the place of the accident. We held that the jury could find that the inadequate lighting could constitute negligence: *"If, in the circumstances, the lighting was not reasonably adequate,* or if the usher should have warned plaintiff of the condition of the top step of the stairway when he pointed to the door, or should have lighted him to that point, *a jury would be justified in finding that the defendants had failed in their duty.* Considering the oral evidence with the photographs, we conclude that there was evidence from which the jury might find defendants negligent."

In *Curry v. Atlantic Refining Company,* 239 Pa. 302, the plaintiff fell over iron bars which had been left in a dark passageway in which the plaintiff deemed it necessary to travel. The questions as to whether the defendant should have allowed the obstacles to remain in the passageway or how long they had been there were not considered in determining whether the defendant was negligent or not. The issue of negligence was whether "the employer *failed to light the pathway* in question in such a manner as to fairly disclose the presence of obstructions temporarily thereon." In deciding this issue we held: "Whether or not the defendant company fulfilled its duty in this respect was a question of fact for the jury."

The Majority does not discuss any of these cases, with the exception of the *Stevenson* case already referred to. In this connection the Majority says that the plaintiff relies principally on the *Stevenson* case and the case of *Jerominski v. Fowler, Dick & Walker,* 372 Pa. 291. But the *Jerominski* case was cited by plaintiff's counsel in his supplemental brief on an entirely different point which we will discuss later, namely,

the length of time that the stairway was unlighted—not the length of time the liquid was on the steps.

The Majority Opinion says: "We have considered all the authorities upon which plaintiff relies, as well as those produced by our own research, and are convinced that they are all distinguishable on their facts from the instant case and do not support plaintiff's contention." I respectfully disagree that all the cases cited by the plaintiff do not support his contention. In addition to those I have here discussed there are many other cases which show practically conclusively that this Court has consistently held that the absence of lighting where there is a duty to illuminate a potentially dangerous area is negligence and may be the proximate cause of an accident which would hold the property owner liable in damages.

In *Schaff v. Meltzer*, 382 Pa. 43, the plaintiff was nonsuited in a case involving an accident where he fell over an uneven floor because of the dimness of the light in the area. In his complaint the plaintiff averred, in addition to two other charges of negligence that the "defendants failed 'to afford sufficient, proper or adequate lighting at the said point.'" A nonsuit was entered by the lower Court. In ordering a new trial we said "If *anyone* of these conditions was proved by the plaintiff to have been the proximate cause of the accident, or, if all these conditions together made out a case of prima facie negligence, he was entitled to have his case go to the jury."

In *Dively v. Penn-Pittsburgh Corp.*, 332 Pa. 65, the plaintiff, in seeking the "ladies room" at the Motor Square Garden in Pittsburgh, entered a room and proceeded behind a screen when she was precipitated headlong down a flight of stairs. In describing the locale of the accident this Court said: "There were no lighting fixtures, and consequently no direct light, in

the alcove, but a subdued light was reflected in from the auditorium, enabling plaintiff to see where she was going; however, the area back of the screen was in darkness." In affirming the verdict returned in favor of the plaintiff we said: *"It was the owner's fault, therefore, that adequate light was not supplied, and this was the chief causal factor in the happening of the accident."*

In *Hoss v. Nestor B. & L. Ass'n,* 164 Pa. Superior Ct. 77, the plaintiff, while leaving an apartment house, fell on the outside steps leading from the hall to the level of the sidewalk below. The steps were not defective nor encumbered with any foreign substance. The Superior Court affirmed the plaintiff's verdict: "This plaintiff was dependent on the light coming from a fixture in the ceiling of the hallway to see where she was going. And from the testimony and the favorable inferences from it, to which the plaintiffs are entitled, the lighting of the hallway was grossly inadequate . . . The wife-plaintiff in remaining in the apartment house after dark was justified in assuming that the defendant would supply adequate lighting for her safety in leaving the building even as late as 12:30 a.m. *Her injuries were directly occasioned by inadequate lighting of the two steps of the only means of exit from the building."*

The Majority Opinion says that "the liquid spot and not the absence of the side (wall) light, was the proximate cause of the plaintiff's fall." This is like saying that it is the ham and not the eggs which make ham and eggs. You cannot have ham and eggs without both items. It is true that if there had been no liquid on the steps the plaintiff would not have fallen, but even with the liquid spot he still would not have fallen if the spot where it lay was properly illuminated.

We discussed the subject matter of this appeal as recently as November 1956, in the case of *Duffy v. Peterson,* 386 Pa. 533. There, the plaintiff fell over a cord in a dimly lighted corridor in which he was working. He sued the Fischbach & Moore Company, which was responsible for keeping the working premises lighted, and the Peterson Company which laid down the cord. The jury returned a verdict against both defendants. We affirmed the verdict on the basis that the Fischbach & Moore Company was negligent in not furnishing the proper illumination, and that Peterson was negligent in the manner in which it laid down the cord. If we had used the reasoning which the Court employs in the case at bar, we would have had to exonerate Fischbach and Moore because their responsibility was confined to supplying lighting. On the contrary, we said: "Did Fischbach and Moore use the care required to protect Duffy from the harm which they could reasonably anticipate. The jury found that they did not."

With all this burning incandescence of authority supplied by our own Court, the Majority says that we are bound here by a decision of the Superior Court in the case of *DeClerico v. Gimbel Brothers,* 160 Pa. Superior Ct. 197. But that case is so different from the one at bar that citing it is like expecting an unlighted lantern to overcome the illumination of an arc light. In the *DeClerico* case the plaintiff fell when she stepped on a piece of paper which covered a mushy substance. The Superior Court, in affirming a nonsuit, said: "Since the legal cause of the plaintiff's harm was the soft substance on the tread of the step, there can be a recovery only upon a showing that the defendant had actual or constructive notice of its presence. Of this there was no evidence".

But the legal cause of the plaintiff's harm in the instant litigation (how many times must I repeat it?) was the *absence of light*! Although in the *DeClerico* case the Superior Court said the defendant was injured when she was descending "dimly lighted stairs", the matter of illumination had nothing at all to do with the charge of negligence. In their brief before the Superior Court, the attorneys for the defendant, Gimbel Brothers, stated the questions involved to be as follows: "(1) Is defendant responsible to a plaintiff who suffered a fall because of an alleged negligent condition of a stairway, where it was not shown that the negligent condition existed prior to the happening of the accident nor that the defendant had actual knowledge or constructive notice of its existence? (2) Is the plaintiff guilty of contributory negligence in walking upon a stairway leading from the street level to subway, when the stairway was in part covered with newspapers and she elected to walk upon the part so covered and could not see where she was walking and there was another stairway only one-half block distant?"

The plaintiff's brief stated the question involved to be as follows: "Where plaintiff's testimony is that she was caused to slip and fall as a result of stepping on a large piece of paper covering 'something soft and mushy' on the second step of a stairway to a common carrier; that the said stairway was covered with pieces of torn newspaper at the time and was generally dirty on other occasions; that the nearest available stairway which she knew she could have used was half a block away and that this other stairway was also littered with paper, is there sufficient evidence to go to the jury as to the liability of the defendant?"

It will thus be seen that the question of lighting, as a charge of negligence, was entirely extraneous to the litigation. The statement of claim did not charge

absence of light as an item of negligence. The Trial Court, in entering a nonsuit, made no reference to light or lack of it. The court en banc, in refusing to lift the nonsuit, made no reference to light or lack of it. The issue, and the only issue in the *DeClerico* case, was whether the foreign substance on the stairs had been there long enough to constitute constructive notice to the defendant of its presence.

Therefore, if we are going to be precise about stare decisis, and not simply cite cases at random, we can only say that the *DeClerico* case is no more authority for the case at bar than a case decided in China.

I repeat, to the point of saturation, that the sole issue in the case at bar is whether the City of Pittsburgh discharged its obligation of supplying illumination for the stairs being used by people who had the right to use them; particularly the plaintiff who was in the building while performing the highest duty of a citizen, jury service.

The City of Pittsburgh admitted its responsibility to keep the stairways lighted. Martin McTighe, the custodian of lands and buildings of the City, testified: "Q. There is a wall bracket on every flight of steps? A. That's right. Q. Those lights are kept burning, are they not? A. That's right. Q. And those lights are kept burning during the day, are they not? A. That's right; night and day. Q. *You feel those lights are necsary to light the stairways; is that it?* A. *That's why they are there.*"

Thus, the necessity for the wall lights was established officially. Edward Sigal, a brother-juror to the plaintiff, testified that on the morning of the accident, January 7, 1953, at 9 :45 o'clock, he saw that the wall light between the sixth and fifth floors was unlighted. Since the accident happened at 11 :30, this means that for an hour and 45 minutes the City allowed a danger-

ous condition to exist on the stairs, for, even without any liquid on the stairs, one could still sustain a bad fall as the result of lack of illumination in the stairway.

Of course, it could be argued that the absence of the electric light at the point of the accident did not create sufficient darkness or gloom to endanger the safety of persons using the stairway. But that was a question for the jury. It certainly cannot be said that the absence of negligence was so marked that no reasonable person could reasonably assert that the physical condition of the premises could cause harm to pedestrians. We have said as many times as there are steps in all the buildings in which courts sit to do justice that a nonsuit or a judgment n.o.v. may be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion after viewing the evidence in the light most advantageous to the plaintiff, could determine the issue involved in his favor. What has happened to that rule in this case?

The Majority Opinion, interpreting the defendant's contention, says that "the absence of light was not the proximate cause, but that even if it were, plaintiff failed to prove constructive notice in view of the size of the building and the short period of time the light was out." Size of building certainly has no bearing on the criterion of responsibility for safety. If the owner of a large building is to be excused from keeping it safe because he would need many employees to maintain adequate vigilance, then the owners of a railroad could be excused from maintaining watchmen at the crossings because there were oh so many crossings.

And, with regard to the period of time the lights were out of service, is there any standard which says that a proprietor cannot be responsible if the danger on

his premises has existed only for an hour and three-quarters? Apropos the cases I will cite on this subject, I would like to quote from Patrick Henry who said: "I have but one lamp by which my feet are guided, and that is the lamp of experience. I know of no way of judging of the future but by the past." In the law, Courts are supposed to be guided by the past. Lifting, therefore, the lamp of experience over the precedents of this Court, let us see whether an hour and three-quarters' time is considered too short a period in which to hold that a property-owner must be aware of a peril existing on his property.*

In *Branch v. Phila. Trans. Co.,* 374 Pa. 60, the plaintiff slipped on a banana peel, negligently allowed to remain on the defendant's premises for 25 minutes. We held that 25 minutes was enough time within which the defendant should have learned of the presence of this proverbial, potential accident precipitator.

In *Diakolios v. Sears, Roebuck & Co.,* 387 Pa. 184, the grease spot which was the cause of the plaintiff's mishap was on the defendant's floor for an hour or more. We held: "Nor can it be questioned that proof that the spot of grease was there for more than an hour was sufficient for the jury to find that defendant had or should have had knowledge of its existence."

In *Greenfield v. Pgh. & Lake Erie, R. R.,* 305 Pa. 456, the plaintiff fell because of a nursing bottle which had been lying on the defendant's premises for an hour and a half. This Court affirmed the verdict returned in favor of the plaintiff.

---

* The Majority Opinion says that it will assume *arguendo*, that the lights were out a sufficient length of time for submission of the case to the jury, but since this is only an argumentative assumption, I believe it is necessary to show what this Court has said on the subject.

In *Cathcart v. Sears, Roebuck & Co.*, 120 Pa. Superior Ct. 531, the plaintiff entered the defendant's store at 7 p.m., while it was still daylight. She left two hours later when darkness had set in and she fell on some unlighted steps. The Superior Court held: "The jury by its verdict found the defendant was negligent and that plaintiff was free from contributory negligence."

In *Jerominski v. Fowler, Dick & Walker*, 372 Pa. 291, the jury was justified in finding that two hours' time constituted sufficient constructive notice to a property owner of a dangerous condition existing on steps in his establishment.

Thus, unless we want to smash the lamp of precedent, we cannot say that an hour and three-quarters' time was not, as a matter of law, sufficient time to allow the defendant to learn of the defective lighting over the stairs of its building.

I conclude this rather long dissent by saying what I said at the beginning, namely, that the action of the Court, if allowed to stand, perpetrates a gross injustice. It does more. Because of its inferential repudiation of many of our cases and because of its slight regard for the principle of stare decisis, it will necessarily become a decision to haunt trial lawyers and trial judges seeking to find the proper rule to follow in cases of this kind.