Walters, Appellant, *v.* Char-Mar, Inc.

Argued June 18, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

reargument refused December 14, 1971.

*Joseph F. Mulcahy, Jr.,* for appellant.

*William D. March,* for appellee.

OPINION BY CERCONE, J., November 11, 1971:

Plaintiff-appellant, Vinton R. Walters, instituted a suit in trespass to recover damages for injuries sustained in a fall on the property in Delaware County which he rented from the defendant-appellee, Char-Mar, Inc. At the conclusion of plaintiff's case on liability, the lower court granted defendant's motion for compulsory nonsuit. Plaintiff now appeals to our court.

The fall in question occurred on December 20, 1966 as plaintiff was climbing the stairs which led to the front entrance to his rented home. The stairway consisted of three brick steps and a concrete porch. At the base of the steps was an unfinished concrete platform or slab, which has been described as an "over-pour" of concrete, about six inches wide and with rough and uneven edges. In the front of the home was a combination front yard and parking area for the family car.

The house had undergone major renovations before appellant took possession and signed the lease. Although the lease recited that the lessee was to be responsible for repairs, it was agreed by the parties that the lessor was to finish certain repairs to the premises, including the erection of a handrailing at the front step and the correction and finishing of the rough concrete slab at the base of these steps. During the more than two years that Walters lived in the house before the accident, he frequently reminded the lessor of lessor's promise to perform the above-mentioned repairs. Each time this reminder was delivered, agents of lessor acknowledged their promise in this regard, but the work was never done.

Vinton R. Walters had been a victim of muscular dystrophy for years and had difficulty getting up and down stairs. Because of his physical disability, the plaintiff had adopted a particular style for climbing the steps at the front of his home, which was the entrance he always used. He would drive his car up to a position near the steps, so that he could alight on the concrete area at the base of the steps. He would place both hands on the second step and ascend the first step one foot at a time. This procedure was repeated for each step. In effect, he crawled up the steps.

On the day of the accident, at about 5:00 p.m. plaintiff began ascending the steps in his usual manner when he felt a piece of the rough-edged part of the concrete slab break under his left foot, causing him to fall. As a result of the fall, the plaintiff suffered a severe fracture of the femur and has since been confined to a wheelchair.

Plaintiff based his cause of action on the theory of landlord liability contained in the Restatement 2d, Torts, §357,[1] which has been adopted in our jurisdiction. See *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A. 2d 395 (1968).

The lower court, in granting nonsuit in the instant case, relied on the theories of contributory negligence

---

[1] Section 357, Restatement 2d, Torts, reads as follows:

"Where Lessor Contracts to Repair:

"A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if:

"(a) The lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

"(b) The disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

"(c) The lessor fails to exercise reasonable care to perform his contract."

and assumption of the risk. The court indicated that under the Restatement, a landlord who has agreed to make certain repairs but fails to perform is responsible for resulting harm, but only from those conditions of disrepair which create an *unreasonable* risk to the users of the land. It was pointed out that in the case of *Abrose v. Moffat Coal Co.*, 358 Pa. 465, 58 A. 2d 20 (1948), the Supreme Court discussed what constituted a "reasonable" risk of harm. In that case (concerning a roadway) the court indicated that when a plaintiff knows of the existing dangerous condition because of his past use over an extended period of time, his knowledge, despite the severity of the hazard, makes the risk a reasonable one to that plaintiff. The learned trial court in the instant case went on to find that Vinton Walters' testimony showed he knew of existing defects in the base of the front stairway, but proceeded to use that entrance, hence, assuming the risk that existed. This, it was reasoned by the lower court, made the risk a "reasonable" one and eliminated the liability of the lessor based on §357 of the Restatement.

However, compulsory nonsuit may be entered only in a clear case, and only where there is no doubt as to the inference to be drawn from the evidence. *Jones v. Spidle*, 213 Pa. Superior Ct. 81, 245 A. 2d 677 (1968). The learned trial court in the instant case felt that there was no doubt that plaintiff's own testimony established such contributory negligence and assumption of the risk[2] on his part, as to exclude any recovery from defendant.

Our reading of the testimony leads us to a different conclusion. We believe that the evidence presented in

---

[2] Although these two terms are often used interchangeably, there is a definite distinction which must be recognized. See Distinction Between Contributory Negligence and Assumption of the Risk, 13 U. Pitt. L. Rev. 769 (1952) and *Joyce v. Quinn*, 204 Pa. Superior Ct. 580, 205 A. 2d 611 (1964).

plaintiff's case indicates that the fall resulted from a previously unknown defect in the concrete slab and does not establish plaintiff's contribution to his own injury. If a plaintiff has been negligent, but his negligence has not contributed in any degree to the production of an injury, then his negligence will not prevent the plaintiff's recovery for such injury. *Hamilton v. Fean*, 422 Pa. 373, 221 A. 2d 309 (1966); Restatement of Torts, §465.

During the direct examination of the plaintiff, the following testimony explained how the accident occurred: "A. . . . So I got out of the car and I closed the door and stepped on this little piece of concrete on the front of the steps—Q. What foot did you put on the concrete? A. I put my left foot on there first; and like I said, I put my two hands on the second step from the bottom. And as I raised my right foot to put on (sic) the step in front of me, I felt something *give way*, throwing me on the ground. Q. Gave way where? A. underneath of (sic) my left foot. Q. Do you know what gave way? A. A piece of that jagged concrete, yes." It was clear throughout this colloquy and at several other places in the testimony that plaintiff attributed the cause of his fall *solely* to the crumbling or breaking off of a part of the concrete slab while he stood at the base of the steps.

The lower court, in ordering nonsuit, relied on the fact that plaintiff had notice of the unfinished condition of the base of the steps and the lack of a handrail on the steps. Plaintiff's action of climbing the stairs in the face of these known dangers, it was felt, showed negligence on his part. However, the record clearly shows that the risks of which plaintiff had knowledge were not those to which the accident has been attributed. This was amply shown by plaintiff's testimony on cross-examination. Plaintiff stated that he had noticed

some of the concrete at the base "wearing away" previous to the fall. He was emphatic in his explanation that he had not seen it "break" off; he was concerned because "there were jagged *edges* there and I just figured that it would cause a person to *trip or fall.*" (emphasis supplied)

If the testimony showed that Vinton Walters sustained his injury tripping or falling on one of the jagged protuberances from the cement base, the order of nonsuit would be obviously correct. If he had fallen off the side of the stairs and a handrail would have prevented this fall, compulsory nonsuit might also have been properly instituted.[3] However, it is clear that Walters' testimony established that his fall was caused by a hitherto unknown factor, a weakness in the cement.

The following testimony, which could hardly be more explicit or determinative of the issue, occurred during cross-examination: "Q. The only time that you have any knowledge of the concrete *breaking* or *chipping away* was on this occasion when you fell; is that correct? A. That is right."

Testimony showed that plaintiff used the stairway in question in the same manner and without incident approximately 4,000 times before the accident. We can take judicial notice that cement, one of our strongest and most lasting building products, even in a rough condition, is not expected to give way under the weight of the average person, particularly in view of plaintiff's testimony that he had stepped on the same spot over 4,000 times previously, without mishap. Our law

---

[3] We note that some questions were asked and some answers given on plaintiff's cross-examination relating to his opinion as to whether a handrail, if existing, would have prevented the harm which resulted from his fall. These questions and answers were objected to by plaintiff's counsel, and the court sustained the objections and properly ordered the answers stricken from the record.

operates to negate the doctrine of contributory negligence when harm results from a concealed danger, of which the victim has no actual or constructive notice. *Loeb v. Allegheny Co.*, 394 Pa. 433, 147 A. 2d 336 (1959). Likewise, we recognize that the doctrine of assumption of the risk cannot be applied if the risk is concealed. See *Wild v. Atlantic Refining Co.*, 195 F. 2d 151 (1952), cert. denied, 344 U.S. 857, 73 Ct. 92, 97 L. Ed. 665 (1952), and *Whitley v. Phila. Transportation Co.*, 211 Pa. Superior Ct. 288, 234 A. 2d 922 (1967).

The lower court, in its opinion, and the appellee in its brief, note that the residence which plaintiff was renting had two other entrances, one at the rear and a basement entrance at the side. The cases of *Birthisel v. Concord Premium Bldg. & Loan*, 343 Pa. 194, 22 A. 2d 685 (1941), and *Kresovich v. Fitzsimmons*, 439 Pa. 10, 264 A. 2d 585 (1970), are cited to support the theory that plaintiff was negligent as a matter of law for using a "dangerous" entrance, when a safer one existed. Neither of these cases or others cited are applicable to the instant case as they all deal with a fact situation in which the plaintiff failed to use care in the face of a *known* or *obvious* dangerous condition and the *resulting harm arose from the known danger*.

A compulsory nonsuit is proper only if the facts constituting an affirmative defense are clearly and conclusively established in plaintiff's case. See *Plummer v. Wesner*, 217 Pa. Superior Ct. 24, 268 A. 2d 144 (1970). The evidence presented by plaintiff at trial in the instant case does not clearly or conclusively establish any affirmative defense, and it was error to order nonsuit.

Reversed and remanded for new trial.

WRIGHT, P. J., WATKINS, and JACOBS, JJ., would affirm on the opinion of Judge CATANIA below.