## Lanni *v.* Pennsylvania Railroad Company, Appellant.

82

Argued September 28, 1951. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.
(GUNTHER, J., absent).

*H. Francis DeLone,* with him *F. Hastings Griffin,
Jr.,* and *Barnes, Dechert, Price, Myers & Clark,* for
appellant.

*John J. McDevitt, 3rd,* with him *Peter P. Liebert,
3rd,* for appellees.

OPINION BY ROSS, J., November 15, 1951:

This is an appeal from the refusal of defendant's motion for judgment n.o.v. after verdicts and judgments in favor of the plaintiffs for damages for personal injuries sustained by the wife-plaintiff when she fell on the premises of defendant railroad company.

Husband- and wife-plaintiffs were the holders of passes issued by defendant, entitling them to designated free transportation over defendant's system. The husband, Salvatore Lanni, had been in defendant's employ for 39 years. On September 18, 1946, plaintiffs used free passes on a trip from Philadelphia to Harrisburg. Returning at about 3:30 in the afternoon, they got off defendant's train at its North Philadelphia station and proceeded to walk from the platform through the station building, and along the sidewalk parallel to the south side of the station toward Broad Street, where they planned to take a street car to their home. It was a clear day and the pavement was dry. The sidewalk ends and leads into a driveway which must be traversed by pedestrians in order to reach Broad Street. The driveway is for the use of motor vehicles taking passengers to and from the station, and vehicles are frequently parked parallel to the curb.

Defendant mentions, but does not press, the argument that the release of liability on its part contained in plaintiffs' passes is valid, recognizing that the point is ruled against it by the decision in *Turek v. Pennsylvania R. R. Co.*, 361 Pa. 512, 64 A. 2d 779. It raises no question as to contributory negligence of plaintiff, and the sole issue in the case is whether the defendant had constructive notice of the dangerous condition on its land which caused plaintiff's injuries.

The defendant argues that in refusing its motion for judgment n.o.v., the court below misapplied the familiar doctrine that on consideration of such motion the evidence must be taken in the light most favorable

to the plaintiff, in that in this case the court was not resolving conflicts in testimony between plaintiff and defendant, the latter having offered none, but was resolving conflicts in the plaintiff's own case, and in support thereof cites *Roche v. Pennsylvania R. R. Co.,* 169 Pa. Superior Ct. 48, 82 A. 2d 332. We find no merit in this contention.

The wife-plaintiff testified that when they reached the end of the sidewalk and were about to descend from it to the driveway, she noticed a patch of dust and dirt on the driveway "immediately off the sidewalk" which was the same color as the roadway in appearance, and that as she stepped down she suddenly slipped and fell, sustaining the injuries complained of. She testified that she had made no effort to avoid stepping on the spot because its appearance was simply that of dust and dirt, "the same color as the sidewalk", but that after she fell it was discovered that the dust covered a square of oil or grease which she estimated to have been the size of her body. The husband-plaintiff described the markings of where her foot had slipped as "about ten or twelve inches long." Mrs. Jeane Klein, plaintiff's witness, testified: "Q. Can you describe in more detail just where the skid mark was and what it looked like? A. Well, it was near the end of the curb. The only thing I saw was a big ridge which led me to believe it was grease in preference to oil because you had a definite imprint there where her heel had gone through. Q. What about the color? A. Well, where the ridge mark was it was shiny. Other than that there were no other marks of grease or oil or anything. . . . Q. Could you give us any idea of the length of the skid mark of the heel? Not necessarily in inches but by some indication? A. Well, I would say it was at least a foot long, if not longer, but it was at least a foot long." And on cross-examination: "You could see that there was a very soft substance that her heel had gone

through. . . . Q. And it could have been grease or oil, isn't that a fair statement? A. That is right. Q. And you tell us today that the skid mark that you saw was approximately a foot? A. I said at least a foot long. . . . Well, you could see that there had been this—from raising her there was just this shiny ridge like when you put your finger that is all soft, soft substance." The husband-plaintiff testified that after his wife had fallen he "saw the imprint of [her] body where she had fallen". Plaintiffs and their witness were in agreement as to essential details of the occurrence and we find no conflict of sufficient materiality to preclude liability on the part of defendant. Plaintiffs were not required, as defendant suggests, in order to prove negligence, to describe the exact shade of the color of the oil spot; their description of it as resembling dust and dirt was sufficient. It would be unreasonable to require a plaintiff, particularly more than four years after an accident, to furnish minutely measured dimensions of the area of danger in question, at the risk, otherwise, of incurring a nonsuit. Such policy would lead to introduction of manufactured evidence, which the law does not condone, a fortiori, does not demand.

Since the decision in the instant case hinges entirely on the issue of constructive notice, plaintiff had the burden of proving not only the existence of a dangerous condition on defendant's premises which was the cause of her injuries, but that the condition had existed for a sufficient time to enable defendant to be aware of its dangerous character. Section 343 of the *Restatement of Torts,* incorporated into the decisional law of Pennsylvania, states the doctrine of constructive notice as applied in this Commonwealth. It reads: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the con-

dition which, if known to him, he should realize as involving an unreasonable risk to them . . ." Plaintiff was concedely a business visitor on defendant's premises. The rule is stated in *Mack v. Pittsburgh Railways Co.*, 247 Pa. 598, 93 A. 618, at page 602: "It was the duty of the defendant . . . to provide reasonably safe means of ingress and egress to and from the car. If this grease made the platform unsafe, it was the duty of the defendant's servants in charge of the car to remove it, and if they knew it was there or should have known by the exercise of proper care, and failed to remove it and it caused the plaintiff's injuries, the defendant would be responsible."

In support of its contention that constructive notice was not in fact proved at the trial, defendant attempts to bring itself within the rule of *Angelelli v. Albert J. Mansmann Co.*, 168 Pa. Superior Ct. 275, 77 A. 2d 678. In that case, the wife-plaintiff, carrying parcels, was injured when she fell on the stairs of defendant's department store. She was assisted by defendant's employes and left the store without returning to the stairs to inquire into the nature of the defect on the stairs, if any, which might have caused her to fall. In affirming judgment n.o.v. for defendant, we said: "Before she can plead constructive notice to defendant, plaintiff must establish the premise on which it is founded: that there was a defective condition on the stairs which caused her to sustain injuries. Plaintiff herself did not examine the steps until about a month after the accident, and her husband inspected them three or four days after the accident. Accepting her version as to the condition of the stairs a month later . . . as true in every detail, it does not follow that such condition existed *on the day of the accident* and caused her fall." Proof of the causative factor was lacking, and we held, consequently, that because of the possibility that intervening forces had come into play be-

tween the time of the injury and the dates of inspection by plaintiffs, defendant could not be charged with constructive notice of a defect which was not shown to have existed on the day of the accident. In the case at bar, there is no such failure of proof as to causation of plaintiff's injury. The testimony not only reveals the existence of the oil spot which, because of its resemblance to the area surrounding it gave no warning of the danger lurking beneath its surface, but the inference is plain that plaintiff's fall was caused by stepping upon it. ". . . since proof to a degree of absolute certainty is rarely attainable in any litigated factual controversy, the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which plaintiff relies." *Liguori, Admr., v. Philadelphia,* 351 Pa. 494, 498, 41 A. 2d 563.

In *Pierce v. D., L. & W. R. R. Co.,* 358 Pa. 403, 57 A. 2d 876, plaintiff was refused recovery for injuries sustained when she fell on the steps of defendant's station platform. The Supreme Court said, at page 405 of its opinion: "An effort was made to support a contention that there was grease on the step and that it caused her to fall. She testified, 'I slipped on something soft and very slippery.' *Neither the plaintiff nor any other witness saw what she slipped on; none saw any grease there. . . .* If there had been such a deposit of grease on the step sufficiently long for the trainmen to be advised of it, it would have been evidence from which the jury might have inferred negligence." (Italics supplied.) We cite this quotation by way of contrasting the indefiniteness of testimony as to the causative factor with the definiteness of it in the present case.

The learned trial judge, in his opinion, discussed the issue of foreseeability comprehensively. We quote: "Oil and grease spots are shiny substances which can readily be seen at 3:30 P. M. if of recent origin. How

long it would take under ordinary circumstances to obscure them with dust and dirt at such a location may be difficult to establish as an absolute fact, but the fact of the complete coverage of the spot having been shown without contradiction, it became a question for the jury to determine whether or not defendant could or should have known of the existence of this dangerous condition . . . Even though it was not shown by direct evidence how long the grease or oil spot remained on defendant's driveway, the jury was warranted in finding that it had been there some time, since it was so covered by dust as to make it resemble the entire surface of the driveway. . . . This was not one of the 'normal hazards of life' . . . such as ice on a cartway . . . which are temporary conditions caused by the elements and apparent to and expected by everyone. Here we have a portion of premises owned by defendant and known by it to be used daily by countless numbers of pedestrians and vehicles. . . . It is a matter of common knowledge that motor vehicles leak or drop oil or grease, both in travel and while parked. Defendant was under the duty, therefore, so to maintain its premises as not to permit a spot of grease or oil of approximately one square foot to remain sufficiently long for it to become obscured by dirt and dust and thus constitute a source of danger to those using the premises."

This is a close case. There is considerable doubt as to the liability of the defendant, but it is our opinion that such doubt was properly to be resolved by the jury as a question of fact rather than by the court as a matter of law.

Judgments affirmed.