Hess, Appellant, *v.* Sun Ray Drug Co.

Argued November 14, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas S. Howland,* with him *Melling & Howland,* for appellant.

*Perry S. Bechtle,* with him *Thomas E. Comber, Jr.,* for appellee.

OPINION PER CURIAM, December 29, 1956:

This is an appeal from a judgment of nonsuit in an action of trespass. The judgment is affirmed on the following excerpts from the able opinion of President Judge KUN:

"The evidence in plaintiff's case was rather meagre. It consisted of her own testimony, as follows: On direct examination plaintiff testified that on August 25, 1951, she was about to enter the Sun Ray store located at Frankford Avenue and Orthodox Street, in the City of Philadelphia. She noticed a stand in the entranceway where a clerk was dispensing orange juice, with about eight or nine people standing in front of it. The stand was on the left hand side of the entranceway, and there were doors on both sides of the entranceway. She was about to enter . . . by the left hand door, which was nearer the stand. She described the happening of the accident, as follows: 'Then these children were there and they were evidently fooling. They were laughing and fooling, all these young people, and I slipped and fell on the—' ['Q. As you slipped what happened? A. I wanted to get a hold of the door to go in and just as I did that, I slipped and fell. Q. What part of your body was hurt? A. My arm or my wrist. I fell right on my hand and I felt a very severe pain in my right arm after I fell. Q. Did you observe anything else after you fell? A. Well, I noticed that my clothing was all full of this orange juice.'] After the fall, she noticed orange juice stains upon her clothing. On cross-examination, plaintiff testified that she was not carrying anything at the time of the accident, that she was not looking at the ground but was looking for the door. It was upon the basis of this testimony that the nonsuit was entered.

"The applicable principles of law with respect to the question of negligence are well settled. Plaintiff was a business visitor upon the premises of defendant, which owed her the duty of keeping the premises reasonably safe and of correcting any unsafe condition which was discoverable by the exercise of reasonable

care and diligence. Defendant, however, was not an insurer, and therefore the mere happening of an accident did not impose liability upon it. *Parker v. McCrory Stores Corp.*, 376 Pa. 122. In order for plaintiff to recover, it was incumbent upon her to prove that the condition of which she complained was the result of the direct negligence of an employee of defendant, or that defendant had sufficient constructive notice of the defect to have enabled it to correct that defect. *Lanni v. Penna. R. R. Co.*, 371 Pa. 106.

"In this case all that we have with respect to the happening of the accident is that plaintiff slipped, and after she fell, noticed orange juice stains upon her clothing. There is no evidence as to how the orange juice got on the floor and, therefore, we could not have permitted a jury to speculate that it got there through the direct negligence of defendant's employee. And if the speculation were permitted that the orange juice was spilled by a customer, there is nothing in the evidence as to how long it remained on the floor prior to the accident.

"This case is ruled by *Lanni v. Penna. R. R. Co.*, supra, wherein plaintiff slipped on a grease spot on defendant's premises. There was testimony that the grease was covered with dust or dirt. The Superior Court (170 Pa. Superior Ct. 81) held that the jury could have inferred from the existence of the dust or dirt that the grease had been upon defendant's premises for a sufficient period of time to have constituted notice to the defendant. The Supreme Court reversed the Superior Court and held that there was not sufficient evidence of constructive notice, stating, at p. 112: '. . . it would only be a guess whether the grease spot was on the driveway 10 minutes, 10 hours or 10 days prior to plaintiff's accident.' The same reasoning ap-

plies with equal force in the instant case. Here, if there were orange juice on the floor, there was nothing in the evidence to indicate whether it was spilled 10 seconds, 10 minutes or 10 hours before the accident, just as in the *Lanni* case.

"Plaintiff contends that this case is controlled, not by the *Lanni* case, supra, but rather by *Stais v. Sears-Roebuck & Co.*, 174 Pa. Superior Ct. 498, which was affirmed by the Supreme Court without passing upon the legal question there involved: 378 Pa. 289. In the *Stais* case, supra, in which the Superior Court held that the attendant facts charged defendant with constructive notice of the defect, there was involved a structural defect, and the Superior Court distinguished it from the *Lanni* case by saying, at p. 503-4: 'Lanni v. Penna. R. R. Co., supra, involved the presence of a foreign substance.' So it is with the instant case which also involves the presence of a foreign substance, and it is therefore controlled by *Lanni v. Penna. R. R. Co.*, and not by *Stais v. Sears-Roebuck & Co.*"

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Orange juice is reputed to possess many health-giving properties which, inter alia, supply energy to the tired blood stream, tone to frayed nerve cells, and resiliency to exhausted muscle fiber. It also defends the body against infectious disease, tooth decay, rheumatism and general ill health. It increases the assimilation of calcium, phosphorous, magnesium, and nitrogen. As nourishment it is particularly helpful to infants, invalids, and lazy people. The claims advanced in the name of this plentiful Floridian and Californian product seem generally to be accepted as estab-

lished fact, although there are not lacking carping critics who assert that while orange juice is a pleasant beverage it is no more capable of imparting salubriousness than weak apple cider. Be all that as it may, there is unanimity of opinion to the effect that, spread over cement or tiled pavement, orange juice builds up no one's health and, on the contrary, may be more capable of breaking bones than mending them. In fact, that is the contention of the plaintiff in this case which, in verity, is not to any considerable extent denied by the defendant. What the defendant does deny is that it is responsible for the layer of orange juice which ornamented the tilted tile floor in front of an entrance door to its establishment at 4642 Frankford Avenue, Philadelphia, on August 25, 1951, where and when the plaintiff fell, breaking her right arm, to recover damages for which she sued the defendant, her lawsuit terminating in a nonsuit, to remove which the plaintiff has appealed to this Court, which has affirmed the nonsuit, leaving the plaintiff, not only where she was, but in a worse state than before she came into contact with the aforementioned mosaic of uncontained orange juice.

As the Majority states, having adopted the opinion of the lower Court as its own, the evidence presented in the plaintiff's case was "rather meagre." It could, however, have been more ample. We have no way of knowing if the plaintiff had anything further to present or not. All we do know is that after Judge JOSEPH L. KUN, the Trial Judge, had indicated that he had entered a nonsuit, plaintiff's counsel said:

"Sir, may I say one thing more?"

Judge KUN said No. He apparently felt that, having once spoken in decision, the gate was closed, the door was locked, the guillotine of judgment had fallen.

Nothing could give life to the carcass of the lawsuit which had come to an untimely end in a nonsuit. He apparently did not want to hear anything which might possibly show that there was still some life left in the plaintiff's claim. Once Judge KUN pronounced journey's end, any further testimony or argument would only complicate matters, Judge KUN said.

The trial could not have lasted more than an hour. There are only 17 pages of testimony in the transcript of the trial. There was no expert testimony, no involved set of facts—just some orange juice spilled on a sloping tiled floor. Nevertheless, Judge KUN, with an acumen, perspicacity, and prescience denied plaintiff's counsel, feared that if the lawyer spoke he would complicate the situation, so the Judge said: "No, don't say anything. A nonsuit has been entered and you file a motion to take it off. You would only complicate it now. It is a legal question that I have to worry about now."

But the burden of the Judge's worry might have lightened if he had lent an ear to the attorney who was prepared to present something: perhaps a law citation or even other evidence, all of which might have saved the Court the trouble of worrying over a legal question which could possibly have been averted.

The Trial Court's refusal to listen has covered this case with the orange peels of mystery as to what the plaintiff still had to offer. I enter my protest against the action of the Trial Judge in this respect.

I also protest against this Court's decision which gives authority to an alleged legal conclusion which has no basis in fact, logic, or reason. The plaintiff testified that as she approached the defendant's store she saw a young man dispensing orange juice in the entranceway, that there were two doors to the store

(one to her right and one to her left), that people were coming out of the right-hand door, so she headed for the left door, and that just as she was about to take hold of the door she slipped and fell. When she arose, her dress was spangled with particles of orange fruit and decorated with its unique coloring.

Since she was only entering the store, she had not yet made any purchases and therefore was carrying no packages. This absence of packages was to be her undoing, for the Trial Judge said: "Plaintiff testified that she was not carrying anything at the time of the accident, that she was not looking at the ground but was looking for the door. It was upon the basis of this testimony that the nonsuit was entered."

There is no decision in our appellate court reports, no statement in the law of torts, no proposition in the whole armory of logic which says that a nonsuit must be entered because a person is not looking at the ground when he is about to enter a door. Having traversed successfully the approach leading to a door, any normal human being has the right to assume that he may now open the door without mishap. If one is to enter a door he looks for the knob, or, if it is a knobless PUSH door, he looks for the place against which he is to push in order to apply the necessary pressure to force open the door. What, if as one is about to push open a door he looks to the ground and then cuts his hand on broken glass in the door?

It may well be that in travelling through a snake-infested area, one should keep his eyes on the ground with the hope of catching the glint of a reptile's skin before the reptile strikes with a fatal thrust, but in the middle of a city the size of Philadelphia, at the entrance to a busy drug store, which offers no warning of pitfalls, a confiding customer cannot be blamed for

assuming that his footway will be clear of snakes and mucuous unbottled beverages.

When Mrs. Hess arrived at the door, she did the most natural thing in the world. She reached forward to open the door and pass through it. She explained what happened: "I wanted to get a hold of the door to go in and just as I did that, I slipped and fell."

In falling she broke her arm. She went into the court for a redress of grievance. She was nonsuited. She then reached for the door of this Court and apparently slipped and fell again. I would lift her to her feet and offer her an opportunity to present her case to the jury which is equipped to hear and evaluate her case, a jury presided over by a judge who will not refuse to listen to attorneys because he fears that if he listens, he may hear something which will "complicate" the case.